UNITED STATES of America, Plaintiff,

v.

Michael Darnell HURST, Defendant.

Crim. No. 92–CR–40.

United States District Court,
D. Colorado.

Nov. 22, 1993.

Michael J. Norton, U.S. Atty., Craig F. Wallace, Asst. U.S. Atty., Denver, CO, for plaintiff.

Michael G. Katz, Federal Public Defender, James K. Bredar, Asst. Federal Public Defender, Denver, CO, Michael Darnell Hurst, Aurora, CO, Naomi M. Hurst, Larry K. Hurst, Sr., Denver, CO, for defendant.

## ORDER REGARDING REDUCTION OF SENTENCE

SHERMAN G. FINESILVER, Chief Judge.

Defendant was sentenced by the Court on July 13, 1992, to a term of 78 months' imprisonment to be followed by a 4–year term of supervised release. He plead guilty on May 21, 1992, to Count I of the Indictment against him, relating to possession of crack cocaine with the intent to distribute. This matter comes before the Court on the Defendant's letter/motion dated September 22, 1993, in which he requests that the Court reduce his sentence, as he is of the belief that he plead guilty to possessing an amount of a controlled substance that he did not possess, which resulted in a wrongfully lengthy sentence.

Defendant claims in his letter that he "was not in possession of more than 5 grams of a controlled substance, and by the advice of counsel, Mr. Bredar, I plead guilty to an amount that I am not guilty of . . ." Defendant states, "what I am trying to say is that I only cooperated with my attorney and plead guilty to what he told me too [sic], and by not knowing the law, I now realize that my attorney had me plead to an amount of controlled substance that caused me to receive a sentence that if were correct, would have resulted in a sentence less severe than what I now have".

The Court has examined Defendant's file in this case, and concludes that Defendant was aware of the large sentence he was facing, and in addition that Defendant knowingly and voluntarily plead guilty to Count I of the Indictment, which charged that:

On or about January 22, 1992, in the State and District of Colorado, the defendant, MICHAEL DARNELL HURST, did knowingly, intentionally and unlawfully possess with intent to distribute **5 grams and more** of a mixture or substance containing a detectable amount of cocaine base ("crack cocaine"), a Schedule II controlled substance. (Emphasis added.)

Defendant's Change of Plea Hearing, at which Defendant was represented by James K. Bredar, Esq. of the Federal Public Defender's Office, began at 9:00 a.m. on May 21, 1993. The following exchanges that took place during the hearing suffice to show the Defendant entered his plea knowing both with what he had been charged and what the consequences of his plea might be.

1) After the Court listened to the statements of Defendant's lawyer and the lawyer for the government, Assistant United States Attorney Mr. Craig Wallace, the Court asked Defendant if he understood that "the ultimate sentence is up to the Court". Defendant answered "yes". *Reporter's Transcript, Hearing On Change Of Plea, at page 4 ("Transcript").*

2) The Court continued, "the guideline range has at this time been computed to 78 to 97 months, and the Government says that they would recommend or join in the recommendation and request of your attorney that the confinement, should there be one, should be 78 months. Do you understand that, please?" Defendant answered "yes, sir." *Transcript, pp. 4–5.*

3) The Court then asked Defendant: "Has Mr. Bredar or anyone else guaranteed what the sentence will be in this case?" Defendant answered "No". *Transcript, p. 5.*

4) The Court asked Defendant: "Do you understand what you are charged with?" Defendant stated, "Yes, I do. And, no, I don't." The Court continued: "This is what you are charged with in Count I.

Michael Darnell Hurst, on or about January 22, 1992, in Colorado, you did knowingly, intentionally, and unlawfully possess with intent to distribute five grams and more of a mixture or substance containing a detectable amount of cocaine base, crack cocaine, a Schedule II controlled substance in violation of federal law. Do you understand what you are charged with?" And Defendant answered, "Yes." The Court continued: "And what is your plea, guilty or not guilty?" Defendant stated, "Well, um, I really don't want to plead guilty." *Transcript, p. 5.*

5) At this point, the Court continued the matter over until 11:15 a.m., in order that Defendant could discuss the matter further with his lawyer and his relatives.

6) After the Court returned from the recess, the Court asked Defendant, "Have you had an opportunity to give this some thought during the recess?" Defendant answered: "Yes, your Honor." The Court asked Defendant, "Are you prepared to plead guilty at this time?", and Defendant answered, "Well, I realize I made a very bad mistake, your Honor, and I want to plead guilty." *Transcript, pp. 8–9.*

7) After the Court advised Defendant that he could take additional time to decide, and to speak with his lawyer and family members further, Defendant declined the offer by stating, "I just want to plead guilty." The Court and Defendant then had the following exchange. The Court: "Are you entering this plea of guilty freely and voluntarily?" Defendant: "Yes." The Court: "Is anyone forcing you to do this?" Defendant: "No." The Court: "Have you had enough time to discuss it with your lawyer?" Defendant: "Yes." The Court: "Has your lawyer been available to you?" Defendant: "Yes." The Court: "Are you satisfied with the legal services rendered to yo[u] by Mr. Bredar?" Defendant: "Yes." There followed a discussion regarding whether or not the Defendant believed that Mr. Bredar was interested in Defendant's case, in which it was established that in fact Defendant was satisfied with the services provided to him by his attorney. *Transcript, pp. 10–13.*

8) Again, the Court read Defendant the charge against him in Count I of the Indictment and asked Defendant, "Do you understand what you are charged with?" Defendant answered, "Yes". The Court: "Do you plead guilty or not guilty?" Defendant answered, "Guilty." The Court: "Are you entering this plea of guilty freely and voluntarily?" Defendant answered, "Yes, your Honor." The Court asked, "Is anyone forcing you to enter this plea of guilty?" Defendant answered, "No." The Court asked, "Are you doing it out of fear or pressure from anyone?" Defendant answered, "No." The Court asked, "This is your free and voluntary plea; is that correct?" Defendant answered, "Yes, your Honor." *Transcript, pp. 13–14.*

9) Later, the Court told Defendant, "If I accept your plea of guilty, you will not be allowed to change your mind tomorrow, next week, next year or ten years. Do you understand that?" Defendant answered, "Yes." The Court asked, "Again, what is your plea, guilty or not guilty?" And Defendant answered, "Guilty." Court: "Are you entering this plea out of fear or pressure from anybody?" Defendant: "No." The Court: "Has Mr. Wallace or any of the government agents approached you and forced you or encouraged you to plead guilty?" Defendant: "No." The Court: "Has anyone promised you probation or a light sentence if you plead guilty?" Defendant: "No." The Court: "Has Mr. Bredar said he is sure you are going to get a light sentence?" Defendant: "No." The Court: "Do you understand the attorneys agree that the range is right around 78 to 97 months. Do you understand that please?" Defendant: "Yes." The Court: "And I will look at that carefully, but it will be up to the Court to determine what the penalty should be. Do you understand that, please?" Defendant: "Yes, your Honor." The Court: "Do you understand further that the potential penalty is not less than 5 years nor more than 40 years, $2 million fine, or both, and a $50 mandatory victim assessment fee? Do you understand that, please?" Defendant: "Yes." *Transcript, pp. 16–17.*

10) The Court then told Defendant: "I cannot assure you what the penalty will be other than it will be within the statutory— the statutory blueprint and generally what the sentencing guidelines would dictate, and the attorneys have calculated this from 78 to 97 months. Do you understand that, please?" Defendant responded, "Yes." The Court asked, "Do you understand that the Court is not making any promise or assurance to you that—what the penalty will be or whether probation will or will not be granted?" Defendant replied "Yes." *Transcript, pp. 17–18.*

11) The Court continued, "Have you had enough time to give thought to what your plea should be?" Defendant answered, "Pretty much, yes." The Court: "And what is your plea, guilty or not guilty?" Defendant: "Guilty." The Court: "Has Mr. Bredar, has anyone promised you probation or light sentence if you plead guilty?" Defendant: "No." The Court: "Do you understand what you are charged with?" Defendant: "Yes."

12) The prosecutor, Mr. Wallace, read aloud the government's evidence in the case describing the events of January 22, 1992, including that the "items of controlled substances were later tested and the crack cocaine found cumulatively on the defendant's person and in his car weighed approximately 45 grams." The Court then asked Defendant: "Is this what happened, please?", and Defendant answered, "Yes." The Court: "Do you care to make any corrections or additions?" Defendant: "Well, I just want to say that I was in possession of, um, 5 grams of crack cocaine, and that's it." *Transcript, pp. 19–20.*

13) The Court then asked Defendant's attorney, "Mr. Bredar, do you agree that the evidence will support the plea or finding of guilty and there is a factual basis for the plea?" Mr. Bredar responded: "Yes, your Honor. On the narrow question of whether the defendant was in possession of 5 grams of crack cocaine, based on his statement that he admits he was, I think there is a factual basis for this plea of guilty." *Transcript, p. 20.*

14) Mr. Bredar, during his statement to the Court, stated: "I have explained to him [the Defendant] that if the Court goes along with the recommendation of the Government, which I have actively pursued on his behalf, that he may face a sentence of 78 months imprisonment. He understands that's not guaranteed." *Transcript, p. 21.*

15) The Court, referring to Exhibit A, the Plea Agreement And Stipulation Of Facts, asked Defendant if the signature on page 4 was his, and Defendant answered, "Yes, it is, your Honor." The Court asked, "Did you read this piece of paper?" Defendant answered, "Yes, I did." The Court: "Do you understand it?" Defendant: "Not fully, I don't, but—" The Court: Did Mr. Bredar—a lot of those things are the things I went over with you today; is that correct?" Defendant replied: "Yeah." The Court: "Did Mr. Bredar go over things with you? The bottom line states that the range very well may be as I have outlined to you in regard to the potential of 78 to 97 months. Do you understand that, please?" Defendant: "Yes. *Transcript, p. 22.*

16) Finally, the Court returned to the subject of Defendant's guilty plea. The Court asked Defendant, "Are you entering the plea of guilty voluntarily, Mr. Hurst?" Defendant answered, "Yes, I am." The Court asked, "And of your own free will?" Defendant: "Yes." The Court: "You have been informed and you are fully capable of making a judgment to enter your plea?" Defendant: "Excuse me?" The Court: "And you are capable of making a judgment to enter your plea; is that correct?" Defendant: "Yes, your Honor." The Court: "And you have discussed this with your lawyer at great intervals?" Defendant: "Yes." The Court: "Great enough?" Defendant: "Yes." The Court: "Do you have any questions?" Defendant: "No." The Court: "Again, what is your plea to Count I, guilty or not guilty?" Defendant: "Guilty." *Transcript, p. 24.*

Pursuant to the testimony referenced above, Defendant's plea of guilty was accepted by the Court as to Count I of the Indictment, charging a violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B)(iii). 21 U.S.C. § 841(b)(1)(B)(iii) describes a violation as involving "5 grams or more of a mixture or substance described in clause (ii) which contains cocaine base." Thus, the fact that Defendant plead guilty to possession of *5 grams or more* of crack cocaine is what led to his sentence of 78 months' incarceration.

Defendant was sentenced on July 13, 1992. At the Hearing on Sentencing, the Court asked Defendant: "Mr. Hurst, you entered a plea of guilty on May 21st to Count I of the indictment, at which time the Court went into detail with you as to your rights in this case, and the potential penalty in this case. I take it you are continuing or persisting in your plea of guilty; is that correct?" Defendant answered, "Yes, your Honor."

When Defendant's attorney was asked to make a statement on Defendant's behalf, Mr. Bredar spoke: "There has never been a question of whether or not this man admitted his involvement in this offense. He acknowledges that 4.8 grams of crack were found in his pocket. Fifteen grams of powder cocaine were also found in another pocket. Forty grams of crack were found in his car." When Defendant was asked if he wanted to make a statement, he did not challenge the facts as stated by his attorney. *Reporter's Transcript, Hearing On Sentencing, at page 3.*

In the Plea Agreement And Stipulation Of Facts, admitted as Exhibit A at the Change of Plea Hearing, and signed by the Defendant, the Stipulation Of Relevant Facts includes the following statement:

> The parties stipulate that according to the government's evidence, the offense began on January 22, 1992. The parties further stipulate that at trial the government's evidence would show: On January 22, 1992, an off-duty Lowry Air Force Base security officer named Christian Devinny was travelling down a street in Aurora when he became involved in a traffic altercation with a vehicle owned and driven by the defendant. Devinny flagged down an Aurora Police officer who happened to be on patrol in the area. The officer pulled defendant's vehicle over. During the stop, defendant was searched. The officer

found, in the jacket defendant was wearing, a film canister containing suspected crack cocaine (cocaine base). Also found in defendant's jacket was a clear plastic baggie containing a white powdery substance which resembled cocaine hydrochloride (cocaine powder). At that point, defendant was placed under arrest. The officer searched defendant's vehicle, and located a plastic bag lodged between the driver's seat and the center console. Contained in the bag were two large rocks of "crack" cocaine.

The suspected drug items were tested and weighed by the Aurora Police Department laboratory. The substance in the film canister was determined to be cocaine base, with a net weight of 4.8 grams. The substance in the plastic bag was determined to be cocaine hydrochloride, with a net weight of 15 grams. The rock-like material in the bag found in the car was determined to be cocaine base, with a net weight of 40 grams.

At trial, the government would present expert testimony by Sgt. Paul Mahoney of the Denver Police Department that the amount of cocaine base (45 grams) possessed by the defendant, is consistent with dealing, not personal use.

This statement in the Plea Agreement, as noted above, was signed by Defendant. It is obvious that Defendant was aware that the Plea Agreement indicated that at the time of his arrest he had on his person or in his car more than 40 grams of "crack" cocaine, as well as 15 grams of cocaine powder. The Court finds that Defendant's sentence is supported by law and by the record. Additionally, the Court finds that Defendant understood the facts surrounding and the consequences of his guilty plea.

Accordingly, it is ORDERED that Defendant's letter/motion for reduction of his sentence is DENIED.